**UNITED STATES v. HASKELL TEL. CO. et al.**

**No. 23.**

District Court, N. D. Texas, Fort Worth Division.

May 30, 1939.

J. L. Backstrom, of Dallas, Tex., for the United States, Income Tax Department.

A. M. Ferguson, of Howe, Tex., in pro. per. and for the estate of Kate F. Morton.

Virgil Seaberry, of Eastland, Tex., for F & M Bank of Haskell.

James Kendall, of Munday, Tex., for Joe Lee Ferguson.

Jack Randal, of Lubbock, Tex., for Haskell Tel. Co.

Tom McMahon, of Abilene, Tex., for General Tel. Co.

Ralph Wood, of Dallas, Tex., for R. A. Chapman, Jr.

Head, Dillard, Maxey-Freeman & McReynolds, of Sherman, Tex., for C. T. Freeman and O. D. McReynolds.

WILSON, District Judge.

The suit is by the Government against the Haskell Telephone Company for income taxes alleged to be due by the estate of Kate F. Morton, and asserting a lien on certain telephone stock originally belonging to said estate. The Government undertook to make all with any claims against this telephone stock, and for that matter, all claimants against the estate, parties to this suit; some thirty or forty parties were cited to appear. Many of them disclaimed, others were dismissed from the suit on discovery that they had no claim against the stock or the estate. Those that did appear are Joe Lee Ferguson and A. M. Ferguson, the latter for himself and as administrator of the estate of Kate F. Morton; the defendant Telephone Company, of course; the General Telephone Corporation of New York; the Farmers & Merchants State Bank of Haskell; R. A. Chapman, Jr., and lastly, Freeman and McReynolds, their claim being for attorneys' fees.

■ I reached the conclusion that the Government was entitled to the full amount of its claim, and that it had a lien against the telephone stock in question. The amount of the Government's claim, directly involved here, was at the time of the hearing, $1,492.28. In fact, there was no serious controversy presented as to the Government's claim. No opposition really to it, except such general statements as were made by A. M. Ferguson. The Government has a similar claim against this estate for approximately $4,000, in a way involved here, but directly involved in the case of A. M. Ferguson v. Haskell National Bank, Tex.Civ.App., 127 S.W.2d 242. For the present anyway, no action can be taken as to that claim.

It appears, too, that the Cookingham contract with Joe Lee Ferguson for the purchase of his 20²%₂₁ shares of stock of the Telephone Company was in all respects a valid contract, and that specific performance of it should be enforced, according to its terms.

It is also my conclusion that the liens, judgments and judicial sale asserted by R. A. Chapman, Jr. are valid, having the effect not only to make his claim allowable, but to place in said Chapman the title of all the interest that A. M. Ferguson ever had in the telephone stock, subject to any indebtedness against the estate.

■ The question of attorneys' fees to Wilson, Randal & Kilpatrick for their services in representing the Haskell Telephone Company was an issue, Mr. W. E. Allen of Fort Worth being the only opinion witness introduced, as to the value of the services. From his testimony, together with the facts as to the character and extent of the services performed, I think $2,000 would be a reasonable fee for said attorneys. There were other legal matters in which these attorneys served in addition to this particular case and hearing, among them for instance, an important injunction hearing was had and the injunction granted at their request. This suit, though in the nature only of interpleader, as far as the Telephone Company is concerned, has been most troublesome and has placed considerable responsibility and labor on the attorneys. The Telephone Company seeks nothing for itself, other than protection against the possibility of multiple suits against it in the future. It had at the time of the hearing $40,000 in dividends, ready to pay it out to whom the Courts may finally award it.

There is absolutely no issue made as to the justness nor the amount of the fee claimed by Freeman & McReynolds for legal services performed for the estate. It has been reduced to judgment and is a claim against the estate. It appears to me that it should be allowed for the full amount. The amount of the fee directly involved here is approximately $450. There is apparently due an additional

$1,500, which is involved in the suit (supra) between the Fergusons now pending in the Court of Civil Appeals at Eastland. It possibly could become an issue to be disposed of in this suit but is not now.

The chief contender of all claimants is A. M. Ferguson. He makes the point that any of these claims that are merely against the estate, should not be paid out of the telephone stock, or pro rata dividends therefrom, that were awarded to him as his part of the estate. He makes the suggestion that the lands that were awarded to Joe Lee Ferguson, under the arbitration and otherwise, have been disposed of and are now beyond the reach of the creditors for the satisfaction of any estate debts; that it would be unjust and inequitable for all of such debts to be paid out of his part. As between him and his brother, Joe Lee, that might be very true. A. M. Ferguson's transfer and the transfer of Joe Lee Ferguson of their respective interests in the telephone stock was expressly subject to the payment of the estate's debts. It looks to me that A. M. Ferguson in allowing Joe Lee Ferguson to get his part of the estate and dispose of it, or his creditors to dispose of it, simply left himself in an unfortunate situation about it; that just or unjust, if there is no other part of the estate available to its creditors, they would be entitled to collect their debts out of the telephone stock, or the revenues from it, even though practically all of it was awarded to A. M. Ferguson.

█ Of course, A. M. Ferguson makes the point all the way through that this Court has no jurisdiction to adjudicate any of these claims, or as he puts it, to administer upon this estate; that such powers are exclusively with the Probate Court of Haskell County, and that that court is still administering upon the estate. Theoretically that would appear to be correct, and ordinarily would be. The answers of all the claimants to that is that an arbitration agreement was entered into by Joe Lee and A. M. Ferguson to settle and wind up the estate, and an arbitration was had and an award made by the arbitrators, which award was appealed from, was affirmed and became final, and is now foreclosed by valid and binding judgments of courts of competent jurisdiction; that it carried with it a distribution of all the assets of the estate, and had the effect of closing and ending the Probate administration in Haskell County. They are right about this. The judgments of such Texas courts so provide. Ferguson v. Ferguson, Tex. Civ.App., 93 S.W.2d 513, and many other decisions of the appellate courts, among them one rendered by the Court of Civil Appeals at Eastland, dated April 28, 1939, Ferguson v. Ferguson, 127 S.W.2d 1018, abundantly confirm this view.

The Government takes the position and rightly, that it has had its claim filed with the Probate Court for many years; that in view of the destructive history of litigation between Joe Lee and A. M. Ferguson, that no claimant could have ever gotten any relief through the Probate Court, and that, as a practical matter, the only place of relief for the Government was to file its suit in this Court, which of course, it had a right to do, and here to seek to impress the telephone stock with a lien; that since it came into this Court, it follows that those who had liens or claims or judgments against the stock, and certainly those who had liens against it, under valid contracts with Joe Lee and A. M. Ferguson, would have a right to appear here to subject the residue of any of this stock, after the payment of prior claims, to the payment of their individual debts that might be secured by the stock. There is no question in my mind, but what that arbitration award which became final, had the effect to close the estate. That is, if the courts of Texas of last resort can adjudicate and finally settle anything. I think they do. It makes no difference if the Probate Judge of Haskell County has accepted, or is accepting claims, at this time, and is proposing to administer upon the estate. If such is being done, it is wholly without authority of law, and beyond any question true in so far as any proceedings there relate to this telephone stock.

█ The Farmers and Merchants State Bank of Haskell, presents four claims here. One of them will be allowed and the others denied. The one I allow is based on a judgment, procured on a note executed by Joe Lee Ferguson, of date, December 19, 1938, and which claim at the time of the hearing was approximately $12,381.12. This claim really involves the $20^{20}\!\!/_{21}$ shares of the telephone stock which, under the arbitration, was awarded to Joe Lee Ferguson. The

note was originally to the Farmers State Bank of Haskell, of which the Farmers & Merchants State Bank of Haskell is the successor. There is quite a history to that indebtedness, with its credits, which need not be entered into. Joe Lee Ferguson entered into a contract of sale of his 202%21 interest in the telephone stock, to E. H. Cookingham. As heretofore indicated, that sale is valid and binding and is to be enforced, according to its terms. On the 11th day of June, 1930, Joe Lee Ferguson transferred and assigned all of his interest in the 2212%21 shares of the telephone stock to the predecessor bank, subject to this Cookingham sale. That assignment provided:

"This stock is subject to contract of sale between Joe Lee Ferguson and E. H. Cookingham, dated May 8, 1930. This assignment is made to protect my indebtedness to the Farmers State Bank of Haskell, *and after said indebtedness is liquidated from the proceeds of said sale, the balance remaining from said sale is to be paid to the said Joe Lee Ferguson."* (Italics mine.)

Thereafter, and on September 8, 1936, Joe Lee Ferguson transferred and assigned to the Farmers & Merchants State Bank, all of his interest in all dividends that had accumulated or might thereafter accumulate from said telephone stock. It provided that it was only to secure said bank and its successors in the payment of a certain specified indebtedness. In that assignment there was this provision: "That the said Farmers & Merchants State Bank of Haskell, Texas, should credit all collections made under and by virtue of this transfer and assignment *to the payment of the indebtedness herein stated until the payment of the same, at which time said transfer and assignment shall become null and void and of no effect whatsoever."* (Italics mine.)

Neither the assignment of the telephone stock nor the assignment of the dividends from it mentioned anywhere, as an indebtedness to be secured by such assignments, either of the other three claims presented by the bank.

The first of these three claims is known as the Baker-Campbell Company judgment, which, after all credits, at the time of the hearing was figured to be $222.68. This claim also was reduced to judgment, originally for the amount of $3,900, and was later transferred by the Baker-Campbell Company to the bank.

The second one is what is known as the Tom Davis note, originally in the sum of $2,425. The aggregate amount of this claim at the time of the hearing was approximately $2,842.26. This, also, was transferred from Tom Davis, the original payee in the note, to the bank.

The third one, is what is known as the Henry Johnson note, in the original sum of $2,200, executed February 23, 1932. It seems the Davis and Johnson notes were not reduced to judgment; at least, it is not alleged that they were. The balance due at the time of the hearing on the Johnson note was approximately $3,691.01. There is a discrepancy in the bank's pleadings as to the aggregate amount due on this note, but the last pleading filed by the bank, December 9, 1938, alleges it to be in the above amount.

After setting out all of these claims, the bank alleges: "That as of May 1, 1938, there is a total balance of Eighteen Thousand and Sixty-four and no/100 ($18,064.-00) Dollars owing by Joe Lee Ferguson to this defendant perforce of the deficiencies *due on the two above described judgments, and said two notes which total amount is secured by the foresaid contract lien on said 202%21 shares of stock* in the Haskell Telephone Company and accumulated dividends, and upon the proceeds of the sale of said stock under the Ferguson-Cookingham contract dated May 8, 1930, and that this defendant is entitled to be paid said sum of Eighteen Thousand, Sixty-four and no/100 ($18,064.00) Dollars out of said dividends and the sale of the stock, and is entitled to such judgment herein." (Italics mine.)

As to the existence of a lien, to secure the sums so alleged to be due the bank, the above allegation is not sustained by the testimony offered, except as to the Joe Lee Ferguson indebtedness to the bank, and to secure which, the said assignment by Joe Lee Ferguson of all of his interest in the telephone stock, and his assignment later of all his interest in the dividends, were executed. The above allegation, as to the bank having security for the Baker-Campbell, the Tom Davis and the Henry Johnson claims, appears to be simply the allegation of a mere general conclusion. There are no facts alleged, showing that there was ever any agreement made by Joe Lee Ferguson in writing or otherwise, that those claims were in any manner to be secured by his interest in the telephone stock or

the dividends therefrom. Not only is there no evidence to support any such allegation, but the quoted provision from the stock assignment and the dividend assignment, rather tend to prove the contrary. In one, anything left, after the payment of Joe Lee's indebtedness to the bank, was to be paid by the bank over to him. In the other, when that had happened the assignment was to be void.

It is not even alleged, in connection with the Baker-Campbell Company, Tom Davis or Henry Johnson notes, what they were executed for. Certainly it is not alleged or claimed that they were debts due by the Kate F. Morton Estate. They appear to be the individual indebtedness of Joe Lee Ferguson. This case, of course, cannot be made a clearing house for all of the individual indebtednesses that persons may have against Joe Lee or A. M. Ferguson, where there is no lien disclosed to secure their payment out of the telephone stock, or the dividends therefrom. Such being the circumstances if the Court here should allow those claims and order them paid out of the telephone stock, or the dividends therefrom, it would follow that every current grocery bill, and all similar bills, even though purely personal obligations of Joe Lee and A. M. Ferguson, could likewise be presented here. The Probate Court, in an unchallenged administration of this estate, could not entertain such claims. Only those courts having jurisdiction of them, certainly not this Court, can reduce such claims to judgment. As I have said, no claims even against the estate have the right to be in this Court, or claims against the individual Fergusons, unless the claimants are asserting a lien or something that gives them the right to have such claims paid out of the telephone stock, or, for some reason, to an adjudication of their rights in relation to such stock.

Among the papers I find a letter from L. D. Ratliff of Haskell, Texas, dated March 30, 1939, in which he asks that this Court, in passing upon this matter, take into consideration the claim of the Banking Commission of the State of Texas, stating that, under the law, the Commission has a lien upon the telephone stock, after the payment of the claim of the United States. It appears that Z. Gossett, Banking Commissioner of Texas, in the Government's first amended bill of complaint filed March 25, 1938, was made a defendant. I have not been able, however to find any pleadings among the papers in behalf of the Banking Commissioner, and I am not able to gather from the papers I have, anything as to even the nature of the claim. For that reason, and for that reason only, I am not able to give any consideration to the claim.

Of course, there are many details which I have not tried to cover that will have to be worked out between the attorneys for the various parties in the preparation of the decree to be entered, in accordance with this opinion. I will designate Mr. Randal, of the firm of Wilson, Randal & Kilpatrick of Lubbock, to assume primarily the responsibility, with the aid of the other attorneys, for the preparation of the decree.