### FERGUSON v. FERGUSON et al.

#### No. 9519.

Court of Civil Appeals of Texas. Austin.
Oct. 3, 1945.

Rehearing Denied Oct. 24, 1945.

Alex M. Ferguson, in pro. per.
T. R. Odell, of Haskell, for appellee.

**BAUGH, Justice.**

Appeal is from an order of the District Court of Bell County, approving the report of sale by the receiver, appointed for that purpose, of the lands involved in partition suit between said parties, heretofore appealed to and affirmed by this court, and writ of error denied by the Supreme Court for want of merit. See 181 S.W.2d 601, herein referred to for description of the lands involved, the parties to the suit, and the issues there decided.

It may be noted also that after that judgment became final, appellant again sought by motion in the trial court to set it aside as void on the same grounds urged on said appeal, which motion was denied on the ground that the original judgment was final and res adjudicata of all matters sought to be relitigated in the motion. That order overruling said motion was appealed from and affirmed by this court, in cause No. 9509, on July 18, 1945. See Ferguson's Estate v. Ferguson et al., Tex.Civ.App., 189 S.W.2d 441. On the same date this court, upon application of appellees, in cause No. 9511, issued an injunction restraining and enjoining "A. M. Ferguson, individually and in any capacity he may seek to act, from prosecuting in any court in Texas any suit, motion, action, or proceeding which has for its purpose or seeks to question, modify, annul, set aside, alter or interfere with the execution of our former judgment reported in 181 S.W.2d 601; * * *." See Ferguson et al. v. Ferguson et al., 189 S.W.2d 442.

While Alex M. Ferguson undertook to prosecute this appeal in the several capacities in which he appeared in the partition suit, by prior order of this court this appeal is limited to him in his capacity as temporary administrator of the estate of his deceased wife, Hallie H. Ferguson, in which capacity alone he has, under the partition decree, any title to the lands involved. See 181 S.W.2d 601. Many contentions are made, raising, and seeking to have adjudicated, matters pertaining to the estate of Kate F. Morton, ownership of the property in question, and distribution of the rents and revenues therefrom; but all of these matters have already been three times adjudicated in this court, and foreclosed by a final judgment. However, two questions are here presented relating to the sale of the property at private sale by the receiver, which, appellant contends, prevented the property from bringing its fair and reasonable value and would, if the sale be effectuated and deed made, result in a sale for less than the property is fairly worth.

The first of these contentions is that the trial court should, prior to approval of the receiver's report of sale, have ordered prepared and made available to the bidders, a complete abstract of title, showing a good and merchantable title to the property, without which, it is contended, the bidder would not offer full and fair value for the property, because of uncertainty as to whether a merchantable title could be conveyed by the receiver. This contention is not tenable. The trial court in approving the report of sale did order the receiver to have prepared and furnished to the purchaser a complete abstract of title to be examined by him prior to consummation of the conveyance. In the partition decree, now a final judgment, the trial court established ownership as between the parties to the partition suit. Obviously a partition suit is not in the nature of a suit in trespass to try title, nor to remove cloud from title. As stated in Cleveland v. Milner, 141 Tex. 120, 170 S.W.2d 472, 475, "Partition does not confer title; it effects the localization of undivided interests." The trial court in such partition suit could, and did, determine the ownership as between the parties to the partition suit, a contested issue there. It was clearly not his proper duty nor authority to determine merchantability of title as against anyone not a party to the partition suit, nor his duty to pass upon, nor correct, if such were necessary, outstanding claims, if any, against the property held by others not parties to that suit. This is particularly true here, because the pleadings in the partition suit raised no such issues; but sought only partition as between the parties thereto who claimed to be sole owners.

In reality appellant's contention in this regard is, in effect, that the trial court's partition judgment, which established the ownership of the property as between the Ferguson heirs, is invalid and erroneous in many respects (all urged and overruled on the former appeals), and that under said partition decree no merchantable title could be conveyed by the receiver to anyone. Such contention is but an effort to have again reviewed and a readjudication made of the same issues already finally adjudicated.

The other ground urged for reversal of the order appealed from is that because of the uncertainty in the amount of acreage in said tracts, and the location of the lines and corners thereof, the trial court should, as requested, and before accepting the bid and approving the receiver's sale, have caused a survey to be made; and that had he done so, an excess of between 40 and 50 acres over that disclosed in the order of sale would have been shown, and as a result the lands would have brought more than the $3,700 lump sum bid made and accepted. The trial court did order a survey of the land made before the deed should be executed; but not before the sale was approved.

While the partition decree and the order herein appealed from recite that it included all the lands owned by James Eldridge and Fannie P. Ferguson at the time of their respective deaths (in 1876 and in 1915), and as being "more or less" than the acreage therein stated; it also recited that such lands consisted of two tracts, one of 8½₁₇ acres and one of 142 acres, each of which was particularly described by metes and bounds calling for natural objects for corners. There is nothing to show the correct acreage contained within the field notes; nor whether the distance calls between the natural objects described were correct. The successful bidder did not testify as to what acreage his lump sum bid was based upon. Nor was it shown that he knew what was the actual acreage included in the lands offered for sale. Under such circumstances, and in the absence of evidence to the contrary, it should be assumed that his bid was predicated upon the acreage recited in the decree.

The evidence on the hearing here involved indicates that the aerial photographic survey made by the Federal Government disclosed an area of approximately 195 acres within the visible boundaries of the property. Whether such boundaries followed the field notes of the old deeds does not appear; nor does it appear that the successful bidder knew of such excess, if there was one, when he made his bid. The record does not show what acreage the actual survey made pursuant to the court's order approving the sale disclosed, but it was stated on oral argument that such survey showed 204 acres.

The record further discloses that James E. Ferguson of Haskell County, owner of an undivided ⅘ interest in said lands, made a bid in 1944 of $2,000 for the property, which the receiver recommended be accepted. On March 16, 1945, he made another bid of $3,000 for the property. The receiver recommended that this be accepted. This bid was protested by appellant and the protest set for hearing on May 4, 1945, at which time E. W. Cline made a bid of $3,550. The receiver also recommended that this be accepted. During the progress of the hearing thereon John W. Beall made an offer of $3,620 for said lands, whereupon Cline raised his bid to $3,700, which was approved by the receiver and the court and the lands ordered surveyed and conveyed to him.

The trial court, after hearing evidence pro and con, found that the sale at $3,700 was fairly made for a fair price which was "the highest and best price obtainable." While there was competent evidence to support such finding, we think it is clear that neither the successful bidder nor the court was informed or knew the correct acreage of the lands involved; nor whether the field notes of the partition decree delineated the true boundaries of the land. Under such circumstances, the evidence that there was in reality an excess of approximately ⅓ over the acreage recited in the old deeds and in the partition decree; that the lands would probably have brought more had the survey on the ground been made and the true acreage determined before final approval of the sale; and the fact that the receiver had recommended acceptance of several bids ranging from $2,000 up to $3,700; all strongly support appellant's contention that the trial court should have first ordered the lands surveyed to remove uncertainties as to acreage and that the receiver seek further bids based thereon and make further report thereof to the court. Under all the circumstances we think it was error not to do so.

The order approving the report of sale and herein appealed from is reversed, and the trial court directed to proceed accordingly so as to be assured that the lands included within such established boundaries bring the highest price obtainable therefor.

Reversed and remanded.